UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| STONINGTON INSURANCE COMPANY, | No. 2:16-cv-02577-MCE-DB |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| ROBERT ADAMS; CREATIVE FRONTIERS SCHOOL, INC.; SAUNDRA ADAMS; AO DOE; BR DOE, BY AND THROUGH HER GUARDIAN AD LITEM, C DOE; and DOES 1 through 20, inclusive, | |
| Defendants. | |

Through this action, Plaintiff Stonington Insurance Company ("Plaintiff") seeks rescission of certain insurance policies it issued to a private school, Creative Frontiers, owned and operated by Robert and Saundra Adams. In suing Creative Frontiers and the Adamses (collectively referred to as "Defendants" unless otherwise specified), Plaintiff further seeks a declaratory judgment that it owes no coverage for seven tort actions brought against Robert Adams and Creative Frontiers in Sacramento County Superior Court by AO Doe and BR Doe (collectively the "underlying litigants"[1]), who claim they were molested by Robert Adams while students at Creative Frontiers.

---

[1] The underlying litigants, who have joined in Defendants' request that this action be dismissed or stayed (see ECF No. 12) have also been named as defendants in this matter so that any coverage determination would be binding upon them as well as upon Plaintiff's insureds.

Presently before the Court is Defendants' Motion to Dismiss brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on grounds that the Court should decline to exercise jurisdiction over these proceedings while the underlying tort lawsuits are pending. As an alternative to dismissal, Defendants argue that both cases share the same facts and issues and consequently ask the Court to stay this case pending resolution of the underlying tort proceedings filed against them in state court. Defendants' Motion was filed on January 10, 2017. (Defs.'s Mot. to Stay, ECF No. 11). Plaintiff filed a timely opposition to that Motion on February 9, 2017 (Pl.'s Opp'n, ECF No. 18), to which Defendants filed a timely reply (Defs.' Reply, February 16, 2017, ECF No. 19). For the reasons set forth below, Defendants' Motion to Dismiss is DENIED, but their alternative request to stay is GRANTED.[2]

## BACKGROUND

Since 1974, Robert Adams has owned and operated Creative Frontiers, a private daycare/preschool and elementary school previously located in Citrus Heights, California. In 1982, the California Department of Social Services issued a daycare license to both Robert Adams and his wife, Saundra Adams. Robert Adams also formed a California corporation, Creative Frontiers, Inc., in 2000 whose sole business was the operation and management of the school. According to Plaintiff, Robert Adams has been the Chief Executive Officer, president, and sole shareholder of the corporation since its inception. See Compl., ¶¶ 13-17.

On February 27, 2004, Robert Adams submitted a "Childcare Application" for the procurement of an insurance policy for Creative Frontiers from Plaintiff. The February 27, 2004 Application, as well as the similar Childcare Applications completed by Adams on March 1 and 2, 2005, and March 5, 2008, (collectively the "Policy

---

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1  Applications") instructed Adams, as the insured, to disclose any prior instances or
2  allegations of sexual or physical abuse at the school.  In response to these inquiries,
3  Adams stated there had been no instances or allegations of sexual or physical abuse.
4  Id. ¶¶ 19-20.  In reliance on the representations made by Adams in the policy
5  applications, Plaintiff issued eight consecutive multi-line insurance policies to Robert and
6  Saundra Adams d/b/a Creative Frontiers Elementary Preschool (collectively "the
7  Insureds").  Id. ¶ 23.

On July 29, 2016, AO Doe filed a complaint in the Sacramento County Superior
Court against Adams and Creative Frontiers, and on September 13, 2016, BR Doe, by
and through her Guardian ad Litem, C Doe, also filed a complaint in the Sacramento
County Superior Court against Adams and Creative Frontiers (collectively the
"underlying lawsuits").[3]  The underlying lawsuits  each allege the following causes of
action against Creative Frontiers, alone: (1) negligent supervision and retention of an
employee (Adams) which allowed Adams to commit sexual abuse upon AO Doe and BR
Doe; (2) negligent supervision of a minor which allowed Adams to engage in a harmful
relationship with AO Doe and BR Doe; (3) negligent failure to warn, train or educate
minors, including AO Doe and BR Doe, and their parents to deal with/avoid the risk of
childhood sexual abuse by Adams; and (4) negligent failure to report suspected abuse
despite the fact school employees had a reasonable suspicion that Adams had
committed acts of sexual abuse against children at the school, including AO Doe and BR
Doe.  Each of the underlying lawsuits also asserts claims for (1) intentional infliction of
///
emotional distress, against both Creative Frontiers and Adams, and (2) sexual battery of

---

[3] Defendants have requested that the Court take judicial notice of the docket in those proceedings pursuant to Federal Rule of Evidence 201. ECF No. 11-2.  That request is unopposed and is hereby GRANTED.  Plaintiff has also filed a request for judicial notice as to the preliminary hearing transcript of Robert Adams' criminal proceedings. ECF No. 18-2. Defendant has filed objections to that request. ECF No. 20. Because the Court has not relied on the preliminary hearing transcript in its ruling on this matter, it need not rule on either the objections or the propriety of judicial notice as to the transcript, and declines to do so.

1 a minor, against Adams alone. Id. ¶¶ 48-64.

2 Plaintiff agreed to provide Defendants with a defense for both underlying lawsuits, subject to a reservation of rights. Plaintiff filed the current coverage action on October 28, 2016, asserting causes of action for declaratory relief and rescission as to the policies it issued. According to Plaintiff, Adams failed to disclose knowledge that, in 2000, two former students alleged to local authorities that they had been sexually molested by Adams while attending Creative Frontiers. Id. ¶ 120. Plaintiff alleges that, due to these material misrepresentations by Adams, it is entitled to rescind its policies. Id. ¶ 123.

While Defendants ostensibly seek dismissal of this action in its entirety on grounds that the Court should simply decline to exercise its jurisdiction pending the resolution of the underlying lawsuits, that argument is misplaced. The legal objectives of the two actions are entirely different despite the fact they share common factual characteristics. The underlying actions seek damages for sexual molestation whereas the instant lawsuit disputes the availability of insurance coverage for the defense and indemnification of the Insureds against those molestation allegations. Under those circumstances any argument that this Court should defer to the initially filed underlying actions under the so-called "first to file" rule makes no sense since the issues to be decided are not duplicative.[4] Moreover, it is undisputed that this Court has subject matter jurisdiction over these proceedings pursuant to 28 U.S.C. § 1332 since there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court cannot decline to exercise that jurisdiction absent a compelling reason to do so, and no such rationale is present here.

///

With regard to their alternative request for a stay, Defendants assert that there is

---

[4] Where two cases address duplicative issues, the "first to file" rule defers to the initially filed case. See Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622 (9th Cir. 1991).

an overlap of the factual issues to be decided in the present declaratory relief and rescission action and in the underlying lawsuits in state court.  Given that overlap, Defendants argue they will be prejudiced unless the present action is stayed until after the underlying state tort actions have been concluded.  In its Opposition to this Motion, Plaintiff agrees that it is indeed proper to stay litigation of the declaratory relief causes of action pending conclusion of the underlying lawsuits.  Opp., 2:17-34.  In light of that concession, and the Court's determination as indicated above that outright dismissal would be inappropriate, this Motion proceeds on Defendants' request to stay Plaintiff's request for rescission, only.

**STANDARD**

The power to issue a motion to stay derives from a federal district court's power to control its docket and ensure that cases before it are justly determined.  Levya v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 864-65 (9th Cir. 1979), cert. denied, 444 U.S. 827 (1979).  Indeed, "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Id. at 863-64. "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." Id.  A federal district court has broad discretion in deciding whether to issue a stay.  Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989).

///
///
///
///

**ANALYSIS**

Whenever an insurer defends a third-party action against its insureds under a reservation of rights, "an a-typical insurer-insured relationship is created . . . . [F]actual determinations made in the coverage case, were that to be litigated first, could be binding in the third-party action to the disadvantage to the insured." Home Indem. Co. v. Stimson Lumber Co., 229 F. Supp. 2d 1075, 1091 (D. Or. 2001). Thus, under California law, when an insurer seeks a declaratory judgment under an insurance policy and there is an underlying third-party action against the insureds, a stay of the declaratory judgment action pending resolution of the underlying third party suit is appropriate "when the coverage question turns on facts to be litigated in the underlying action." Montrose Chem. Corp. v. Super. Ct. (Montrose I), 861 P.2d 1153, 1162 (1993). Granting a stay in such cases serves to "eliminate the risk of inconsistent factual determinations that could prejudice the insured." Id. Such factual inconsistencies may arise "because the [insurer's] duty to defend frequently turns on coverage, and . . . coverage frequently turns on factual issues to be litigated in the third party liability action." Montrose I, 861 P.2d at 1164. Federal courts in California have followed the Montrose rule. OneBeacon Ins. Co. v. Parker, Kern, Nard & Wenzel, 1:09-CV-00257 AWI GSA, 2009 WL 2914203, at *4 (E.D. Cal. Sept. 9, 2009) (citing Cort v. St. Paul Fire & Marine Ins. Cos., 311 F.3d 979 (9th Cir. 2002); Conestega Servs. Corp. v. Exec. Risk. Indem., 312 F.3d 976 (9th Cir. 2002)).

Courts have noted three major concerns surrounding the trial of coverage issues which necessarily turn upon the facts to be litigated in the underlying action. First, the insurer, who is supposed to be defending the insured and with whom the insured has a special relationship, is effectively attacking its insured and thus aiding the claimant in the underlying suit. Haskel, Inc. v. Super. Ct., 33 Cal. App. 4th 963, 979 (1995) (citing Montrose Chem. Corp. v. Super. Ct. (Montrose II), 25 Cal. App. 4th 902, 910 (Cal. App. 4th 1994)). In order to guard against such abuse, the Court must not permit the insurer to effectively join forces with the third party claimants in order to defeat coverage.

Montrose II, 25 Cal. App. 4th at 909-10.

Second, litigating the coverage dispute while the underlying action is still pending requires the insured to "fight a two front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions." Haskel, Inc., 33 Cal. App. 4th at 979 (citing Montrose II, 25 Cal. App. 4th at 910). Fighting such a two front war "effectively undercuts one of the primary reasons for purchasing liability insurance." Id.

Third, "there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former." Id. (citing Montrose II, 25 Cal. App. 4th at 910).

"It is only when there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist." Montrose II, 25 Cal. App. 4th at 910 (emphasis added). When such a potential conflict exists, a district court should enter a stay. "By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying judgment, the declaratory relief action may properly proceed to judgment." Montrose I, 861 P.2d at 1162. Put differently, it is only when there is no overlap of issues that the Court has discretion to not order a stay. Great Am. Ins. Co. v. Superior Court, 178 Cal. App. 4th 221, 235-36 (2009).

In the present case, there are two underlying tort suits pending against the Insureds in Sacramento County Superior Court. (Defs.'s Mot. to Stay, 1:7, ECF No. 11-1). Plaintiff is defending the Insureds in these actions under a reservation of rights. (Pl.'s Opp'n, 5:18-22, ECF. No. 18). The Insureds' liability in the underlying lawsuits hinges on the underlying litigants establishing that Creative Frontiers knew or should have known of the allegations of Adams's sexual abuse of students prior to 2003. (Defs.'s Mot. to Stay, 10:6-8, ECF No. 11-1). For Plaintiff to be successful on its rescission claim, it will need to prove that on or before February 2004, Adams had

knowledge of the accusations of sexual abuse made against him by former students in 2000. Plaintiff claims that this issue can be decided now because there is no factual overlap between the rescission claim, which relies on Adams having had knowledge of the 2000 allegations, and the liability issues to be adjudicated in the underlying lawsuits, which depend on whether Creative Frontiers had knowledge of the same allegations. (Pl.'s Opp'n, 11:11-24, ECF. No. 18).

      Plaintiff's arguments are misplaced. According to Plaintiff, the issue whether Adams misled the carrier with respect to whether molestation allegations had been made is completely distinct from whether his company, Creative Frontiers, had actual or constructive knowledge of any actual molestation so as to make it negligent for failing to prevent or stop the abuse. The problem with this claim is that for all intents and purposes Creative Frontiers and Adams, who is the owner, operator, and principal of Creative Frontiers, are one and the same entity. If Plaintiff is able to establish that Adams was on notice in 2004 of the sexual abuse allegations from 2000, then—assuming the underlying litigants establish that molestation did in fact occur—the issue of Creative Frontiers's knowledge of the abuse will effectively have already been decided. Any knowledge that Adams has will be imputed to Creative Frontiers. Adams's knowledge of the allegations is therefore clearly a fact at issue in both the present action and the underlying lawsuits. Thus, making a factual determination of Adams's knowledge in the present action could be binding in the underlying action to the disadvantage of the Insureds.

      Furthermore, each of the three concerns discussed above weigh in favor of the Court issuing a stay in the present case. First, Plaintiff, who is supposed to defend the Insureds in the underlying tort actions in state court, is effectively attacking the Insureds' defenses in the present action. In doing so, Plaintiff may aid the underlying litigants in their suits against the Insureds. The Court will not permit Plaintiff to join forces with the underlying litigants to defeat coverage. Second, requiring the Insureds to litigate the coverage dispute with Plaintiff while the underlying lawsuits are still pending would

require the Insureds to fight a two front war.  Third, as discussed above, because of the overlap between Plaintiff's theories for rescission and the nature of the claims pending against the Insureds in the underlying action, there is a real risk that if the declaratory action proceeds to judgment before the underlying action is resolved, the Insureds could be collaterally estopped from contesting issues in the underlying action due to findings made by this Court in this lawsuit.

Given the foregoing, a potential conflict clearly exists between the coverage dispute in this Court and the underlying state court tort actions.  Because the coverage question turns on facts to be litigated in the underlying action, Defendants' Motion to Stay is GRANTED.

## CONCLUSION

Following consideration of the circumstances of this matter as a whole, the Court in its discretion finds that Defendants' request for a stay of these proceedings is appropriate, pending resolution of the concurrent tort actions against the Insureds in state court.  Defendants' Motion to Stay (ECF No. 11) is accordingly GRANTED.  The stay shall remain in effect until the underlying lawsuits against the Insureds have been concluded.  The parties are hereby ordered to file a Joint Status Report every ninety (90) days from the date of electronic filing of this order, and a final Joint Status Report not later than twenty (20) days following final adjudication of the later of the two underlying state court actions.

IT IS SO ORDERED.

Dated: July 13, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE